IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TAMMY LODA HULL,                                                                                    PLAINTIFF

v.                                             4:13CV00016-DPM-JJV

CAROLYN W. COLVIN,
Acting Commissioner, Social
Security Administration,                                                                            DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit

new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff, Tammy Hull, has appealed the final decision of the

Commissioner of the Social Security Administration[1] to deny her claim for Disability Insurance benefits. The parties filed their respective briefs, and the case is ready for a decision. The Court also entertained oral argument on August 20, 2013. At this hearing, Plaintiff was represented by Jim Carfagno, Jr., Esq. The Commissioner was represented by Special Assistant United States Attorney Melinda R. Newman. Both sides came well prepared and presented excellent arguments on behalf of their clients.

This review function is extremely limited. The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether the plaintiff was denied benefits due to legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. §405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the court must consider

---

[1] Carolyn W. Colvin was sworn in as Acting Commissioner of the Social Security Admin-istration on February 14, 2013, replacing Michael Astrue. She has therefore been substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d)(1).

evidence that detracts from the Commissioner's decision as well as evidence that supports it; the court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

Plaintiff bears the burden of establishing a physical or mental impairment that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. §§ 423 (d)(1)(A); 1382c(3)(A)(B). The only disputed issue in this case is whether Plaintiff is disabled within the meaning of the Social Security Act. Here, this issue turns on the impact of Plaintiff's mental impairments on her residual functional capacity.

In support of her Complaint, Plaintiff argues that the ALJ failed to give fair consideration to the medical evidence provided by her treating physician, Billy McBay, M.D. (Pl.'s Br. 7-11.) Plaintiff argues her treating physician's opinions generally should be accorded substantial weight. *E.g., Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993); *Prince v. Bowen*, 894 F.2d 283, 285 (8th Cir. 1990); *see Richmond v. Shalala*, 23 F.3d 1441, 1443 (8th Cir. 1994) (a treating physician's opinion concerning the physical limitations of a claimant is entitled to substantial weight).

Dr. McBay reported that Plaintiff had extreme limitations from agoraphobia and post traumatic stress disorder. (Tr. 399-403.) He assessed she had "marked" restriction of activities of daily living, "extreme" difficulties in maintaining social functioning, concentration, persistence, and pace, and had "four or more" two-week or more episodes of decompensation. (Tr. 401).

The ALJ, however, discounted Dr. McBay's opinions because they were "not supported by any treatment records or the claimant's testimony." (Tr. 39.) Instead, the ALJ instead chose to give "great weight to the opinion of Dr. Don Ott." (*Id.*) Don Ott, Psy. D., performed a consultative Mental Diagnostic Evaluation. (Tr. 262-268.) The ALJ concluded "the medical record, [Ms. Hull's] testimony and her activities of daily living support his conclusions."

Typically, an ALJ should give more weight to a treating physician. Yet, in this case, the Court finds Dr. McBay has overstated his opinions as supported by the overall evidence of record. For example, treatment notes fail to support a conclusion that, in a one year period, she had more than four episodes of decompensation lasting at least two weeks. Plaintiff had one episode of decompensation to this degree in April 2008 when she was hospitalized. (Tr. 246-48.) So the ALJ could fairly discount Dr. McBay's opinions to the extent those opinions were not supported by his treatment

notes.

However, the ALJ has "cherry picked" Dr. Ott's findings to support his opinion. The ALJ recited many of Dr. Ott's findings in his opinion. (Tr. 37-38.) Based on Dr. Ott's findings, the ALJ concluded Plaintiff had the residual functional capacity to perform light work "where interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment involved." (Tr. 33.) Missing in the ALJ's opinion (Tr. 37-38) is Dr. Ott's statements that, "She is irritable and unhappy. Her sleep is disturbed and her eating habits are very poor. She looks sad and distraught, and was tearful at times. She reported incidents of aggressive behavior at past jobs. . . Her history, symptoms, and presentation were consistent with dysthymic disorder. Improvement is unlikely without cognitive-behavioral psychotherapy." (Tr. 266.) Given these additional opinions of Dr. Ott, it is hard for the Court to conclude that the ALJ's residual functional capacity is supported by substantial evidence, especially when the ALJ gave "great weight" to Dr. Ott's opinions. (Tr. 39.)

The ALJ's opinion also fails to properly address the findings of Brent V. Witherington, M.D. The ALJ generally addressed Plaintiff's treatment at Perspectives Behavioral Health Management (Tr. 36), but does not squarely

address the opinion of the doctor who treated her there. With regard to her residual functional capacity, Dr. Witherington concluded Plaintiff had a "serious role impairment" such as "consistently missing at least one full day of work per month as direct result of [her] mental health." (Tr. 295.) He also believed she had a "serious interpersonal impairment as a result of being totally socially isolated, lacking intimacy in social relationships, showing inability to confide in others, and lacking social support." (*Id.*) As a treating physician, Dr. Witherington's opinions are generally entitled to substantial weight. But the ALJ failed to address them.

Finally, much argument is centered around the ALJ's conclusions that Plaintiff's activities of daily living are commensurate with light work activities. In discussing Plaintiff's activities of daily living, the ALJ concludes she has only "mild restriction." (Tr. 32.) He looks to her activities of daily living throughout his opinion to support his residual functional capacity assessment. (Tr. 32, 34, 37.) For example, the ALJ states, "The record demonstrates the claimant is able to perform her activities of daily living. The claimant is able to take care of her ten-year-old grandson, clean her home, cook, drive, and shop for groceries and household items. She takes her grandson to school and picks him up." (Tr. 37.) It appears the ALJ has recited


address the opinion of the doctor who treated her there. With regard to her residual functional capacity, Dr. Witherington concluded Plaintiff had a "serious role impairment" such as "consistently missing at least one full day of work per month as direct result of [her] mental health." (Tr. 295.) He also believed she had a "serious interpersonal impairment as a result of being totally socially isolated, lacking intimacy in social relationships, showing inability to confide in others, and lacking social support." (*Id.*) As a treating physician, Dr. Witherington's opinions are generally entitled to substantial weight. But the ALJ failed to address them.

Finally, much argument is centered around the ALJ's conclusions that Plaintiff's activities of daily living are commensurate with light work activities. In discussing Plaintiff's activities of daily living, the ALJ concludes she has only "mild restriction." (Tr. 32.) He looks to her activities of daily living throughout his opinion to support his residual functional capacity assessment. (Tr. 32, 34, 37.) For example, the ALJ states, "The record demonstrates the claimant is able to perform her activities of daily living. The claimant is able to take care of her ten-year-old grandson, clean her home, cook, drive, and shop for groceries and household items. She takes her grandson to school and picks him up." (Tr. 37.) It appears the ALJ has recited

the information Plaintiff provided in her Function Report. (Tr. 204-211.) Realizing the ALJ found Plaintiff not fully credible (Tr. 39-40), reliance on only part of her statements is simply not accurate. For example, it is true she cares for her grandson. However, Plaintiff explains she has to "make [herself] do it, mostly because of [her] grandson." (Tr. 206.) It is also true she shops. But Plaintiff states she shops "only when I have to and it doesn't take long because I hurry as fast as I can." (Tr. 207.) She further states, "I don't like to go outside or leave the house. It makes me panicky, and [I] don't know why." (*Id.*) The ALJ used only part of Plaintiff's statements about her abilities, without context. Thus, the ALJ's conclusions about these statements are not supported by substantial evidence.

So while it is Plaintiff's burden to prove her disability, the Court finds Plaintiff has provided sufficient basis to call into question the ALJ's RFC determination. On remand, the Commissioner should more fully consider the opinions of Plaintiff's treating and evaluating doctors. Additionally, Plaintiff has called into question the legitimacy of the ALJ's conclusions regarding her activities of daily living. And on remand, the Commissioner should more fully develop the record in this regard.

IT IS, THEREFORE, RECOMMENDED that the final decision of the

Commissioner be reversed and this case be remanded for proceedings consistent with this opinion. This would be a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE